IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08 cv 02405-RPM

**ERIC WINFIELD,**

**Plaintiff,**

v.

**THE CITY & COUNTY OF DENVER;**
**DENVER POLICE DEPARTMENT OFFICERS ANTONIO MILOW;**
**GLENN MARTIN AND THOMAS JOHNSTON;**

**Defendants.**

---

## THIRD AMENDED COMPLAINT

COMES NOW the Plaintiff, Eric Winfield, by and through his counsel of record, Alan G.
Molk and Thomas J. Helms, and for his Third Amended Complaint against the Defendants
named above, states as follows:

### I. PARTIES

1.      Eric Winfield (hereinafter referred to as "Winfield") was at all times material a citizen
of the State of Colorado and the United States.

2.      The City and County of Denver is a municipal corporation, organized and legally
existing in the State of Colorado.

3.      Denver Police Department Officers Antonio Milow (hereinafter referred to as
"Milow"), Glenn Martin (hereinafter referred to as "Martin"), and Thomas Johnston (hereinafter
referred to as "Johnston"), were, at all material times, acting within the course and scope of their
employment and as such were state actors within meaning of 42 U.S.C. § 1983.

## II.   JURISDICTION

4.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 , 1343 since this case arises under the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983. Subject matter jurisdiction over the state claims is pursuant to 28 U.S.C. § 1367. Plaintiff has given timely notice of his intent to sue pursuant to C.R.S. § 24-10-109 et seq. and more than ninety (90) days has elapsed since that date permitting this suit to proceed pursuant to C.R.S. § 24-10-109(6). Venue is proper in this judicial district since the acts and conduct complained of occurred in Denver, Colorado.

## III.   GENERAL ALLEGATIONS

5.      During the evening of October 27, 2007, Winfield and two friends went to the Pour House lounge in the Lo Do district to watch the third game of the World Series between the Colorado Rockies and the Boston Red Sox. After the game they went to Winfield's sister's apartment at 19th and Arapahoe and socialized there until about 1:45 a.m.

6.      They left the apartment and walked to Winfield's car which was parked on 14th and Market Streets in front of or near the Le Rouge restaurant and bar.

7.      As they approached the Le Rouge, they noticed some type of commotion in front of the Le Rouge. To avoid any problem they walked around the crowd to get to Winfield's car. Upon information and belief, there had been some type of altercation in the Le Rouge between a customer and Le Rouge bouncer.

2

8.     At no time that evening or any other time had Winfield or his friends been inside or frequented the Le Rouge. Winfield did not know any of the Le Rouge principals, employees or security guards (i.e., bouncers). Furthermore, neither Winfield nor his companions said anything to anyone in the crowd outside of the Le Rouge.

9.     In any event, as he was approaching his car, Winfield was tackled from behind by one of the defendant police officers. He was thrown to the pavement face first and then repeatedly kneed in the groin and punched in the face and head.     Each of the three defendant police officers participated in the physical beating.

10.     Upon information and belief, the police were called to the Le Rouge to quell the disturbance or arrest those involved in the ruckus. As Winfield and his friends were walking by, one of the Le Rouge employees, without any basis, pointed to Winfield and yelled out to the police officers "that's him, he's the one!" The police instantly tackled Winfield without first asking him any questions or investigating the incident despite the presence of numerous individuals (including Winfield's friends) who could have readily refuted the assertion that Winfield was involved in the incident at the Le Rouge.

11.     As a result of the police beating, Winfield was taken in an ambulance to Denver General for the treatment of his injuries including, but not limited to, a broken nose, lacerations to his face requiring 10 stitches, scrapes and bruising to his face, contusions to his face, two black eyes, a burst blood vessel in one eye, chipped and cracked teeth, bruised ribs, and permanent nerve damage in his right hand due to tight handcuffs which were not removed for several hours.

3

12.    Despite the lack of probable cause, Winfield was arrested and charged with assaulting a police officer and resisting arrest. The charges were later dismissed.

13.    Each of the individual police defendants (Milow, Martin and Johnston) individually and in concert with the others, acting under the color of law, deprived Winfield of his right to be secure in his person against unreasonable seizure as guaranteed by the Fourth Amendment. Defendants' acts reflected malice and a willful and wanton disregard for the rights and feelings of Winfield.

14.    The violation of his Fourth Amendment rights caused damages to Winfield, including physical pain and suffering as well as emotional distress. The exact amount of damages will be determined at trial. Winfield reserves the right to seek exemplary damages.

## IV.  FIRST CLAIM FOR RELIEF
### (Unlawful Arrest)

15.    Paragraphs 1-14 are incorporated herein by reference.

16.    Winfield was arrested without probable cause by the police defendants who, under the facts available, did not have an objective, reasonable or good faith belief that Winfield was guilty of the offenses charged.

17.    Such arrest was in violation of Winfield's right under the Fourth Amendment of the United States Constitution to be free from unreasonable or unlawful arrest and caused Winfield to suffer physical and emotional damages. The exact of damages will be determined at trial. Winfield reserves the right to seek exemplary damages.

4

18.     Pursuant to 42 U.S.C. § 1983, Winfield prays that this Court enter a monetary judgment in his favor and against Milow, Martin and Johnston in an amount sufficient to compensate him for the damages suffered as a result of defendants' violation of his constitutional (Fourth Amendment) rights.  Winfield seeks any further relief deemed appropriate by the Court including costs, attorney fees, prejudgment and post-judgment interest.

## V.  SECOND CLAIM FOR RELIEF
### (Excessive Force)

19.     Paragraphs 1-18 are incorporated herein by reference.

20.     The individual Defendant Police Officers used greater force than would have been reasonably necessary to effect a lawful arrest.

21.     The use of excessive force caused Winfield both substantial physical and emotional injury.  The exact amount of damages will be determined at trial.  Winfield reserves the right to seek exemplary damages.

22.     Such excessive force was in violation of Winfield's right under the Fourth Amendment of the United States Constitution to be free from unreasonable seizure of his person.

23.     WHEREFORE, Pursuant to 42 U.S.C. § 1983, Winfield prays that this Court enter a monetary judgment in his favor and against Milow, Martin and Johnston in an amount sufficient to compensate him for the damages suffered as a result of defendants' violation of his constitutional (Fourth Amendment) rights.  Winfield seeks any further relief deemed appropriate by the Court including costs, attorney fees, prejudgment and post-judgment interest.

## VI.   THIRD CLAIM FOR RELIIEF
### (Conspiracy to Violate Civil Rights)

24.   Paragraphs 1-23 are incorporated herein by reference.

25.   Defendants Milow, Martin and Johnston, by their conduct and concerted action, agreed to and did utilize excessive force to accomplish the unreasonable seizure and illegal arrest of Winfield in violation of Plaintiff Winfield's constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizures.

26.   In particular, the Defendants completed the following overt acts pursuant to their agreement:

a)   One or more of the individual Defendant Police Officers tackled Plaintiff Winfield from behind without any warning or justification;

b)   While Plaintiff Winfield was on the ground, one or more of the individual Defendant Police Officers kicked and punched Plaintiff Winfield, causing the following injuries to him:

- A broken nose;
- Facial lacerations requiring ten stitches;
- Two black eyes;
- Chipped and cracked teeth;  and,
- Bruised ribs;

27.   Additionally, after physically assaulting and battering Plaintiff Winfield, one or

6

more of the Defendants placed and tightened handcuffs on Plaintiff Winfield to such a degree so as to cause nerve damage to both hands.

28.    The agreement and/or conduct of the individual Defendant Police Officers amounted to a conspiracy to violate the constitutional rights of Winfield

WHEREFORE, pursuant to 42 U.S.C. § 1983, Winfield prays that this Court enter a monetary judgment in his favor and against Milow, Martin and Johnston in an amount sufficient to compensate him for the damages suffered as a result of defendants' conspiracy to violate his constitutional (Fourth Amendment) rights. Winfield seeks any further relief deemed appropriate by the Court including costs, attorney fees, prejudgment and post-judgment interest.

## VII.   FIFTH CLAIM FOR RELIEF
### (Assault And Battery)

29.    Paragraphs 1-35 are incorporated herein by reference.

30.    The actions of the individual Defendant Police Officers were willful and wanton, and accompanied by a conscious and callous disregard of the substantial risk of injury to Winfield. As a direct consequence, none of the individual defendant police officers is immune from liability pursuant to C.R.S.  24-10-118(2)(a), regardless of whether their acts were determined to have occurred during the course and scope of their employment with the City and County of Denver and the Denver Police Department.

31.    Winfield was physically beaten and suffered the injuries as a direct result of the individual and concurrent acts of Milow, Glenn and Johnston as set forth above.

32.    As a direct result of their lawless, vicious and unwarranted conduct, Milow, Glenn

7

and Johnston, individually and concurrently, caused emotional and physical injuries to Winfield including, but not limited to, a broken nose, lacerations to his face requiring 10 stitches, scrapes/bruising to his face, contusions to his face, two black eyes, burst blood vessel in one ear, chipped and cracked teeth, bruised ribs, and nerve damage in both hands. The exact amount of damages will be determined at trial. Winfield reserves the right to seek exemplary damages.

33. The acts of Milow, Glen and Johnston were intentional and amounted to assault and battery.

34. Winfield prays that this Court enter a monetary judgment in his favor and against Milow, Martin and Johnston, in an amount sufficient to compensate him for the damages suffered as a result of the assault and battery. Winfield seeks any further relief deemed appropriate by the Court including costs, attorney fees, prejudgment and post-judgment interest.

Dated this 16th day of April, 2009.

Respectfully submitted,

THE LAW FIRM OF ALAN G. MOLK

By: /s/ Alan G. Molk
    Alan G. Molk, #10988
    6400 S. Fiddler's Green Circle, #2025
    Englewood, CO 80111
    Phone 303-290-8808
    Fax   303-290-8851

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the within **THIRD AMENDED COMPLAINT**, has been electronically filed and served this 16th day of April, 2009, as follows:

Thomas G. Bigler, Esq.
Office of the City Attorney, Litigation Section
201 West Colfax Avenue, Suite 1108
Denver, CO 80202-5332

David J. Bruno, Esq.
Bruno, Colin, Jewell & Lowe, P.C.
Once Civic Center Plaza
1560 Broadway, Suite 1099
Denver, CO 80202

*/s/ Barbara L. Werner*
Barbara L. Werner
The Law Firm of Alan G. Molk
6400 S. Fiddler's Green Circle
Suite 2025
Englewood, CO 80111
(303) 290-8808
bwerner@molklaw.com

9